Dissenting Opinion.
Marr, J.
After this cause was remanded to the district court, on the appeal from the order of removal into the circuit court, 29 An. 372, Hunton answered; and he stated in his answer that Goodrich was dead. No other suggestion of the death was made in the district court. Barrow, the administrator, who had been made a party, in this court, to the appeal from the order of removal, was one of the attorneys for Goodrich, in this suit, from its inception. The case proceeded; and final judgment was rendered “in favor of defendant, Logan Hunton, and *584 against plaintiff, Ferdinand M. Goodrich, dissolving and setting aside the injunction,” etc.
Barrow’s first appearance in the district court, in his capacity as administrator, was in the motion for an appeal from the final judgment, and he gave the requisite bond as appellant. To say the least of it, the judgment was irregular; and if it is not a mere nullity, I think it should have been corrected in the court of original jurisdiction. Perhaps, if appellee had joined in the appeal and had asked that the judgment be amended in this respect, this court might have substituted the name of Barrow, the living representative, for that of Goodrich, who was no longer amenable to human tribunals. Until this has been done, in some way, I do not think we can deal with the judgment appealed from as an existing reality.
By our law, suits do not abate by the death of the parties ; but where the plaintiff dies, until bis successor appears and becomes plaintiff in his stead, there is no suit; and no judgment can be rendered. Barrow was a party to the appeal; but the only question in that case was as to the legality of the order of removal; and when the cause was remanded for further proceedings, he should have been made party plaintiff; and the record of the district court should have shown that he was a party to all the proceedings subsequent to the death of Goodrich.
This point was not raised by counsel; but we cannot ignore it: nor ’ can they by act or omission give effect and validity to a judgment against one no longer in being.
If we could consider the case on its merits, I do not think the Fourth District Court of Orleans had jurisdiction of the original suit of Hunton ; and I think the judgment in that suit, in favor of Hunton' against Goodrich, was void for want of jurisdiction.
The proof is plain that Goodrich lived in Carroll parish from 1842 to the time of his death, in 1876, except for ten months, from'November, 1872, to September, 1873, when he lived with his family in a rented house in New Orleans. He was a member of the Bar since 1849 ; and since his marriage, in 1853, he lived with his family, in his own dwelling, at Lake Providence, except for the ten months just mentioned. Before the war, in 1859, he bought a house in New Orleans; but he never occupied it: it was occupied by his father-in-law Pilcher. He was a member of the commercial firm of Pilcher & Goodrich of New Orleans, which virtually ceased to exist, and went out of business during the war ; and in July, 1865, it was announced in the Picayune that that firm had been dissolved in June, 1865; and that it had been succeeded by the firm of Pilcher & Barrow. According to the views expressed by us in Eanlett vs. Collier White Lead Co., 30 An. 58, he was not subject to the jurisdic *585 tion of the courts of Orleans, at the time the suit was brought and citation served, in April, 1866.
The general rule is, that one having a domicile in the State must be sued in the court of his domicile. O. P. arts. 89,162. To this rule there are exceptions, none of which are applicable to this case, except that laid down in Code Practice, art. 93: “If one be cited before a judge, whose jurisdiction does not extend to the place of his domicile or of his usual residence, but who is competent to decide the cause brought before him, and he plead to the merit, instead of declining the jurisdiction, the judgment given shall be valid, except the defendant be a minor.”
This language is plain. It is the voluntary act of the defendant, his submission to the jurisdiction, by p’eading to the merit, and it is this alone which gives validity to the judgment of a court which would otherwise be without jurisdiction ratione materia?. As the law-maker has chosen to make this exception, the courts cannot enlarge it, or give to some other act or fact the effect which the law has given to the voluntary appearance of defendant, and his plea to the merit.
It is argued that art. 333, 0. P., attributes to the judgment by default the same effect as that given to the plea to the merit by art. 93. Article 333, as originally adopted, was: “It is a rule which governs, in all cases of exceptions, except in such as relate to the absolute incompetency of the judge before whom the suit is brought, that they must be pleaded specially, in limine litis, before issue joined, otherwise they shall not be admitted.”
Under the dominion of this article, this court held in Magee vs. Dunbar, 10 La., in 1837, that “ there is a class of exceptions which the Code requires to be pleaded in limine litis, before issue joined, which we understand to be an answer to the merits, and that an issue is tacitly joined by a judgment by default; but when that judgment is set aside by filing an answer, it is as if it had never existed.”
The court had just said : “The filing of an answer is a matter of right; and does not depend upon the discretion of the court, nor does the Code appear to us to restrict the defendant in relation to the exceptions which he may plead in such a case.” The case with which the court was dealing was one in which a default had been taken ; and it had been set aside on the appearance of defendant and his filing an answer, the beginning of which was a dilatory exception. The district judge had ordered that part of the answer stricken out, on the ground that issue had been joined by the default; and it was too late to set up a dilatory exception.
It will be observed that by article 336, of the C. P., “ declinatory exceptions may be pleaded in the defendant’s answer, previous to his answering to the merits; but, except as relates to the declinatory exceptions» *586 the defendant must plead in his answer all dilatory or peremptory exceptions,” etc. So that, in the view of the court, at that time, when the default was set aside, the defendant might plead in his answer all such exceptions as he could have pleaded if such default had never been taken, and the legislature was of the same opinion ; for, in 1839, by Act No. 53, section 23, p. 172, it was enacted that, “ Hereafter no dilatory exceptions shall be allowed in any ease, after'a judgment by default has been taken ; and, in every case they must be pleaded in limine litis, nor shall such exceptions hereafter be admitted in an answer in any ease.”
This section, in the words quoted is now the second paragraph of Art. 333; and the first paragraph is the article as adopted originally. The meaning is plain. By the first paragraph no exception, save as to absolute incompetency shall be allowed after issue is actually joined by answer filed. Of course this does not include such peremptory exceptions founded in law,'res acljudicata, prescription, etc., which may be pleaded at any stage of the cause before final judgment. By the second paragraph, no dilatory exception shall be allowed after issue is tacitly joined by default.
It is assumed that the plea of domicile is a dilatory exception, and that it cannot be pleaded after issue joined ; and the argument is, as the default is a tacit joinder of issue, the court which had not jurisdiction, by reason of the domicile, acquires jurisdiction by default, and may validly proceed to judgment. The answer is that art. 333 plainly makes the distinction between the voluntary appearance and act of defendant in joining issue by his answer, and the tacit issue joined by default. In the first case all exceptions, except such as relate to the absolute incompetency of the judge, are cut off by answer filed : in the second case all dilatory exceptions are cut off by default. “Dilatory exceptions are such as do not tend to defeat the action, but only to retard its progress.” C. P. Art. 332. “Declinatory exceptions do not tend to defeat the demandbut they do tend to defeat the action: that is, if they are maintained, the suit must be dismissed. Arts. 331, 335.
There are two kinds of declinatory exceptions, 1st: “ When the exception is taken to the competency of the judge, pursuant to the rules above provided.” The other is lis pendens. The rules thus referred to, “provided above,” are those which relate to the competency of the judge, art. 86, et seq. Art. 87 prescribes the manner of ascertaining whether the judge be competent, that is, by considering: 1st. The object or the amount in dispute. 2d. The person of the defendant. 3d. The place where the action is to be brought.
Article 89 lays down the general rule that the defendant must be sued at the place of his domicile or usual residence, and art. 93 is the exception to that rule, considered with reference to the competency of the *587 judge. If the defendant plead to the merit, the judge, competent with respect to the object or the amount in dispute, and competent with respect to the place at which the suit is brought, is also competent with respect to the person of the defendant, who, by pleading to the merit, has submitted, voluntarily, to a jurisdiction from which he would otherwise have been exempt.
Prom these several articles the following rules are clearly deducible:
1st. After answer filed, all exceptions, whether dilatory or declinatory, are cut off. Arts. 93 and 333, paragraph 1.
2d. After judgment by default, all dilatory exceptions are cut off. Paragraph 2.
3d. The declinatory exception to the competency of the judge, as provided in arts. 87, et seq., is cut off only by the actual joinder of issue, by answer or plea to the merit. Of course want of competency, ratione materice, may be set up at any time.
The consequence follows, logically, and irresistibly, that the judgment by default does not give jurisdiction to the judge, incompetent by reason of the domicile of the defendant; and if he proceed to judgment, in confirmation of a default, the defendant may attack that judgment for nullity for want of jurisdiction, and have it declared void, on proper proof.
Jurisdiction, the competency of judges, is the creature of the law ; and our law has taken care to define it by precise rules. It exists only where it has been conferred by law. The attempt of a judge to exercise power and authority not conferred by law, is usurpation, and is void. The Code of Practice makes but a single distinction between jurisdiction ratione materice, and jurisdiction ratione personce: and that is: want of jurisdiction, of competency ratione materice, cannot be cured by the act or consent of the parties; while want of jurisdiction, of competency, ratione personce, may be waived by the consent and act of the defendant, in the manner, and only in the manner prescribed by law, that is, by the voluntary appearance of the defendant, and his answer or plea to the merit. All j udgments rendered by judges not competent in the sense of arts. 86, et seq., are void. The competency of the judge ratione personce is as absolute as incompetency ratione materice, except, that in the manner authorized by and prescribed in art. 93, the defendant, if he chooses, may remove the incompetency ratione personce.
The case of Phipps vs. Snodgrass, ante, p. 88, is relied upon as establishing a different doctrine. That case was decided correctly; but it differs widely from this.
Phipps brought suit against Snodgrass and wife, on her note and mortgage. Service was made on both at their domicile in New Orleans, as shown by the sheriff’s return ; and in due time judgment by default *588 was taken against both. She alone filed an exception, in these words:
“Now into court comes Mrs. R. Snodgrass, and ior her exception to the plaintiff’s suit pleads that she resides out of the jurisdiction of this court, and she prays that plaintiff’s suit be dismissed, and for all general relief.”
In Adlé vs. Anty, 1 An. 261, and Tillett vs. Upton, 12 An. 146, it was held that where default has been taken against husband and wife, and she appears alone and pleads, the default cannot, legally, be set aside; and plaintiff may disregard her plea, and have the default confirmed. That is what was done in this case. The exception was never tried. Mrs. Snodgrass made an attempt to have the case removed into the U. S. C. Court; but her bond, like her plea, was without the aid and assistance •of her husband. The defendants appealed to this court. There was no proof on their part; and the question really was, whether the default was properly confirmed.
Her plea, beside her utter want of capacity to appear in court without the authority of her husband, R. C. C. art. 121, contained no cause of ■exception. The truth of the plea, as matter of fact, was disproved, prima facie, by the sheriff’s return of service at the domicile. Her petition for removal, declared that she was a citizen of the State of Louisiana; and her exception did not disclose her place of residence. It was a mere nullity in form and in substance ; and if her husband had joined her in the plea, the judge could not have allowed it to prevent the taking of a default, or the confirmation of the default.
In Goodrich’s ease the want of competency of the judge is pleaded and set forth with minuteness and detail of dates and circumstances ; and the proof of the alleged domicile is complete. No act, no plea, no consent on the part of Goodrich invested the judge with jurisdiction, or deprived Goodrich of the right to be sued only before his own judge and at his domicile. It is the misfortune of Hunton if he resorted to a tribunal not having jurisdiction ; but he could have learned by inquiry of Pilcher & Barrow, successors of Pilcher & Goodrich, that the latter firm no longer existed ; 'and that Goodrich resided at his domicile in Carroll parish. He did ascertain the names of the persons who composed the firm of Pilcher & Goodrich ; and ho set them out in full in his petition. One question more of the person who gave him the names would probably have given him full information as to the domicile of each of them respectively. Hardship or inconvenience cannot control the application of positive law ; but the hardship in this case is more apparent than real.
The jurisdiction of the courts should be fixed and settled ; and I would yield my opinion to that of my brethren, in this case, if I could do so consistently. My convictions are such that I cannot assent to the *589 conclusions of the majority of the court: and the importance of the questions constrains me to give thus fully the reasons for my dissent. If we can deal with the case, I think the judgment appealed from should be reversed : that the judgment in the original suit, in favor of Hunton against Goodrich, should be declared null and void for want of jurisdiction, competency ; and that the injunction granted in limine should be reinstated and perpetuated.